IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| HECTOR CANTU, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL NO. 1:14-CV-71 |
| § | |
| PLATINUM MARKETING GROUP, LLC § | |
| d/b/a DIABETESHELPNOW.COM, LLC, § | |
| § | |
| Defendant. § | |
| § | |

# MEMORANDUM AND ORDER

The Court has before it Plaintiff Hector Cantu's ("Cantu") motion for entry of default judgment. Dkt. No. 21. After considering the motion, the attached declarations, and the record in this civil action, the Court dismisses this case without prejudice because Plaintiff has not carried his burden to show that this Court has personal jurisdiction over the out-of-state defendant.

## I. Procedural History

In his amended complaint, Cantu alleges that beginning in February 2013, Platinum Marketing Group LLC d/b/a/ DiabetesHelpNow.com, LLC ("Platinum") called his cell phone without his permission in an attempt to sell him its products. 1st Am. Compl. ¶¶ 3–5, Dkt. No. 11 (also alleging that Cantu "never provided his cellular telephone number" to Platinum). Cantu allegedly spoke with a live representative when he received the first call and asked that person to stop calling him. *Id.* ¶ 6. Despite his request, he states that he continued to receive automated calls from "Diabetes Help Now" offering him a meter to monitor blood sugar levels. *Id.* ¶¶ 7, 8.

1

Cantu sued for money damages under the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended, 47 U.S.C. § 227 (2012). *Id.* ¶¶ 10–15. He pleaded that he resides in Brownsville, Texas and named DiabetesHelpNow.com, LLC a/k/a Welco, LLC d/b/a Welco Health as the defendant in his original complaint, Dkt. No. 1 ¶¶ 1, 2, but he substituted Platinum, which he alleges is organized under Florida law, as the defendant in his amended complaint, 1st Am. Compl. ¶ 2. This Court granted Cantu's request for entry of default against Platinum on December 23, 2014, finding that Cantu presented prima facie evidence that he properly served Platinum in accordance with Florida law and Federal Rule of Civil Procedure 4(h)(1)(A). Order 2–4, Dec. 23, 2014, Dkt. No. 17.

Cantu attached two declarations to his motion for default judgment. In the first, Jenny DeFrancisco ("DeFrancisco"), Cantu's attorney-in-charge, states: "I am informed and believe that Defendant is not an infant or incompetent person." Dkt. No. 21-2 ¶ 7; *see also id.* ¶ 8 (stating that Platinum cannot serve in the military because it is a limited liability corporation). The second sets forth Cantu's testimony based on his personal knowledge and recollection. Cantu Decl. ¶ 1, Dkt. No. 21-3 (stating that Cantu could "competently testify to the matters set forth herein from personal knowledge [if called as a witness]. Most of the facts testified to herein are taken from my personal recollection of the incidents discussed."). Cantu states that he had no business relationship with Platinum, never gave Platinum his cell phone number, and never agreed to be called by Platinum. *Id.* ¶¶ 6–7. According to his declaration, Cantu "received around 80 calls from Defendant after [he] had requested that all calls to me cease." *Id.* ¶ 9.

## II. Legal Standard

This Court has entered default against Platinum, not a default judgment. Order 4, Dec. 23, 2014, Dkt. No. 17 (entering default). Though the two steps have similar names, entry of default precedes entry of a default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (emphasis in original) (citing Fed. R.

Civ. P. 55(a) to explain that "[a] *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules," the clerk enters default after the plaintiff submits appropriate proof of default, and "[a]fter defendant's default has been entered, plaintiff may apply for a judgment based on such default"); *see also* Fed. R. Civ. P. 55(a). Once default is entered, the plaintiff may move for default judgment.

When a plaintiff moves for entry of a default judgment, a federal district court may "conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to[, among other things,] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(C). The federal rules do not favor default judgments, and a district court resorts to "a drastic remedy" when it enters a default judgment. *Lewis v. Lynn,* 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). The policy disfavoring a default judgment, however "is counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion." *Safdar v. AFW, Inc.*, 279 F.R.D. 426, 431 (S.D. Tex. 2012) (quoting *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999)).

As a consequence of the entry of default, "the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (quoting *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)). The defaulting defendant, however, does not admit legal conclusions or "facts that are not well-pleaded." *Gines v. D.R. Horton, Inc.*, 867 F. Supp. 2d 824, 829 (M.D. La. 2012) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Therefore, a defendant in default can still challenge "the sufficiency of the complaint and its allegations to support the judgment," *id.* (quoting *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x

860, 863 (11th Cir. 2007)); "the validity of service of process . . . [; and] the court's exercise of personal jurisdiction." *Id.* (quoting *Tyco Fire & Sec.*, 218 F. App'x at 864).

### III. Subject-Matter Jurisdiction

This Court, as it must, raises briefly the question of its jurisdiction over this case's subject matter. *See Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 324–25 (5th Cir. 2008) (raising subject-matter jurisdiction in TCPA case sua sponte because federal court "may consider subject-matter jurisdiction at any point, including for the first time on appeal"). Cantu cites neither the federal diversity-jurisdiction statute, 28 U.S.C. § 1332(a), nor the federal-question statute, *id.* § 1331 in his amended complaint. *See* 1st Am. Compl. ¶ 1 (alleging under heading "Jurisdiction" that "[t]his action arises out of Defendant's repeated violations of the [TCPA]"). The memorandum of law accompanying Cantu's motion for default judgment states, without elaboration or citation, that "[t]his Court has subject matter jurisdiction over Plaintiff's claims as Plaintiff resides in Brownsville, Texas." Mem. Supp. Mot. For Default J. 2, Dkt. No. 21-1. Nevertheless, the U.S. Supreme Court held in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012) that federal district courts have federal-question jurisdiction, concurrent with state courts, over private TCPA enforcement actions like this one. Based on *Mims*, the Court concludes that it has subject-matter jurisdiction in this case.

### IV. Personal Jurisdiction

The Due Process Clause of the Fourteenth Amendment prevents a state from binding a non-resident to a judgment rendered by one of its courts absent "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (internal quotation marks in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Id.* (quoting *Daimler*

4

*AG v. Bauman*, 134 S.Ct. 746, 753 (2014)). "Because Texas's long-arm statute reaches to the constitutional limits, the question [this Court] must resolve is whether exercising personal jurisdiction over the defendant offends due process." *Vanderbilt Mortg. and Fin., Inc. v. Flores*, 692 F.3d 358, 375 n.14 (5th Cir. 2012) (quoting *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010)); *accord. Companion Prop. & Cas. Ins. Co.*, 723 F.3d at 559 (citation omitted). In the context of the requisite minimum contacts, "[p]ersonal jurisdiction may be 'specific' or 'general.'" *Companion Prop. & Cas. Ins. Co.*, 723 F.3d at 559; *accord. Walden*, 134 S. Ct. at 1122 n6. (discussing specific and general jurisdiction). To show that this court has general jurisdiction, Cantu must demonstrate that Platinum's "contacts are 'continuous and systematic,' so that the exercise of jurisdiction is proper irrespective of the claim's relationship to the defendant's contact with the forum." *Id.* (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)); *see also Walden*, 134 S. Ct. at 1122 n.6 (discussing doctrines of general and specific jurisdiction). To decide if Plaintiffs have made a prima facie showing of specific personal jurisdiction, this Court asks: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Vanderbilt Mortg. and Fin., Inc.*, 694 F.3d at 375 (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).

Cantu's argument that this Court has specific personal jurisdiction rests on two allegations: (1) he is a Texas resident, *see* 1st Am. Compl. ¶ 1; Cantu Decl. ¶ 2, and (2) Platinum knew that Cantu resides in Texas when it called him because "the phone number at which it reached Plaintiff has a Texas area code of 956," Mem. Supp. Mot. For Default J. 3. Cantu supplies no citation to support the second of these allegations, however, *see id.*, and he does not specify the area code of his cell phone in his amended complaint or declaration. Thus, the Court has no competent evidence establishing the area code of Cantu's cell phone number before it.

5

Nonetheless, based on DeFrancisco's representation, the Court will assume, for purposes of the instant motion only, that the number Platinum called when it reached Cantu's cell phone was assigned to the 956 area code. *See* Fed. R. Civ. P. 11(b)(3). Arguing that these facts give rise to minimum contacts with Texas, Cantu analogizes calling a cell phone number in an area code associated with Texas to placing a letter in the mail addressed to a Texas resident and knowingly initiating a garnishment action directed at a Texas resident. *See Harris v. Lathrop & Gage. LLP*, No. H-12-919, 2012 WL 2958280, at *3—*4 (S.D. Tex. July 19, 2012) (holding two letters sent by law firm to Texas address gave rise to specific jurisdiction over claims based on contents of letters); *Bray v Cadle Co.*, No. 4:09-CV-663, 2010 WL 4053794, at *11–*12 (S.D. Tex., Oct. 14, 2010) (finding prima facie case of purposeful availment where plaintiff asserted debt-collection claims and alleged defendant in Ohio initiated or approved initiation of garnishment action knowing plaintiff lived in Texas).

Despite the analogy Cantu proposes, the Court cannot find that Platinum purposefully availed itself of the protections of Texas law on this record. Cantu cites no evidence showing that Platinum knew that a call to a cell phone number having an area code associated with Texas was as likely to reach a Texas resident as a letter sent to a Texas address or a garnishment action directed at a Texas resident would be. Mem. Supp. Mot. For Default J. 3; *see also Bray*, 2010 WL 4053794, at *12 (reasoning that defendants "knew that by initiating the garnishment action (from Ohio or wherever else they might have been), the garnishment and injury to Plaintiff was going to occur in the State of Texas"). Federal district courts have divided over the precise question presented here: whether contacting a cell phone number in an area code associated with a state, without more, proves purposeful availment when the call gives rise to an alleged TCPA claim. *Contrast, e.g., Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3–*4 (N.D. Cal. July 14, 2014) (collecting cases) (holding that, "where Shac intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action,

6

Shac expressly aimed its conduct at California") with *Sojka v. Loyalty Media LLC*, No. 14-CV-770, 2015 WL 2444506, at *3 (N.D. Ill. May 15, 2015) (holding that text messages directed at cell phone numbers in Illinois area code did not demonstrate purposeful availment).

Mindful that "we live in a very mobile society," *United States v. Torres*, 573 F. Supp. 2d 925, 939 (W.D. Tex. 2008) (citing *Kiow Tribe of Okla. v. Mfg. Techs., Inc.* 532 U.S. 751, 758 (1998)), the Court determines that showing that a TCPA defendant called a phone number in an area code associated with the plaintiff's alleged state of residence does not, by itself, establish minimum contacts with that state. The law of personal jurisdiction responds flexibly to social and technological developments. *See, e.g., Shaffer v. Heitner*, 433 U.S. 186, 202 (1977) ("The advent of automobiles, with the concomitant increase in the incidence of individuals causing injury in States where they were not subject to in personam actions under *Pennoyer*, required further moderation of the territorial limits on jurisdictional power.").

As of 2014, "a significant majority of American adults," more than ninety percent of them, own cell phones, *Riley v. California*, 134 S. Ct. 2473, 2484, 2490 (2014) (citations omitted). Many cell phones could "just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers," and their varied uses would still not be exhaustively cataloged. *Id.* at 2489. Given those varied uses, the majority of smart phone users do not easily part with their phone and the data it contains. *See id* at 2490. (citing a recent poll in which "three-quarters of smart phone users report[ed] being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower"); *see also United States v. Jones*, 132 S. Ct. 945, 955–56 (2014) (Sotomayor, J., concurring) (discussing importance of cell phones in modern life and suggesting that reconsideration of Fourth Amendment doctrine may be warranted). As a result of the changes wrought by pervasive use of cell phones, courts dismissing TCPA claims for lack of personal jurisdiction have implicitly or explicitly "recognize[d] that a cell phone prefix, unlike a landline, is not

dispositive of the residence, domicile or location of the cell phone owner" *Sojka*, 2015 WL 2444506, at *3. Indeed, the cases show that, increasingly, people keep their cell number as they move from state to state, untethering the number's area code from its owner's state of residence. *See id*; *Cunningham v. Carribean Cruise Line, Inc.*, No. 3:14-CV-01040, 2015 WL 475271, at *6 (M.D. Tenn. Feb. 4, 2015) (holding defendant did not purposefully avail itself of protections of Tennessee law by calling cell phone number associated with North Carolina area code where record showed that plaintiff was a Tennessee resident who obtained cell phone in Tennessee); *Michaels v. Micamp Merchant Servs.*, No. 13-191E, 2013 WL 5970340, at *3 (W.D. Pa. Nov. 8, 2013) (finding no specific personal jurisdiction in TCPA case where plaintiff resided in Pennsylvania and had cell phone number with Florida area code because record contained no evidence of conduct aimed at Pennsylvania).

Aside from Cantu's representation that his cell phone number is associated with Texas, the record includes no evidence showing that Platinum knew that Cantu was a Texas resident.[1] *See* Cantu Decl. ¶ 8 (stating that Cantu told representative that he was not interested and asked that calls cease but not alleging that he told representative that he was a Texas resident). Because the representation that Platinum called a cell phone number in an area code associated with Texas when it reached Cantu does not, in and of itself, establish Platinum's purposeful availment of the benefits and protections of Texas law, the record does not allow this Court to exercise personal jurisdiction over Platinum. *See Sojka*, 2015 WL 2444506, at *3; *Cunningham*, 2015 WL 475271, at *6; *Michaels*, 2013 WL 5970340, at *3.

### V. Conclusion

---

[1] Cantu's declaration confirms that Platinum called his cell phone. Cantu Decl. ¶¶ 4, 7. Therefore, this case does not involve a call to a landline or a record that does not disclose what kind of phone the plaintiff has. *See Abramson v. Caribbean Cruise Line, Inc.*, 2014 WL 2938626, at *2, *9 (W.D. Pa. June 30, 2014) (holding that "it can be said that Defendant CCL 'expressly aimed their conduct at Pennsylvania' because the number [called] was associated with the State of Pennsylvania" by area code but not stating whether plaintiff had a cell phone or landline (citing *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007))).

8

For the foregoing reasons, the Court determines that the record is presently insufficient to conclude that it has personal jurisdiction over Platinum. Accordingly, the Court **DENIES** Cantu's motion for default judgment, Dkt. No. 21, and dismisses this case without prejudice for lack of personal jurisdiction.

It is so ORDERED.

SIGNED this 13th day of July, 2015.

Hilda Tagle
Senior United States District Judge